**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**


**CAITLIN L. SIMS,**

      **Plaintiff,**

                              **Civil Action 2:16-cv-342**

     **v.**                        **Judge James L. Graham**

                              **Magistrate Judge Elizabeth P. Deavers**


**COMMISSIONER OF SOCIAL
SECURITY,**

      **Defendant.**

## OPINION AND ORDER

Plaintiff, Caitlin L. Sims, brings this action under 42 U.S.C. § 405(g) for review of a final

decision of the Commissioner of Social Security ("Commissioner") denying her application for

Social Security Supplemental Security Income benefits.   This matter is before the Court on

Plaintiff's Statement of Errors (ECF No. 11), ("SOE"), the Commissioner's Memorandum in

Opposition (ECF No. 12) ("Opposition"), Plaintiff's Reply (ECF No. 13) ("Reply"), and the

administrative record (ECF No. 8).   For the reasons that follow, Plaintiff's Statement of Errors

is **OVERRULED** and the Commissioner's decision is **AFFIRMED**.

## I.      BACKGROUND

Plaintiff protectively filed her application for benefits in October 2012, alleging that she

has been disabled since October 3, 2004, due to depression and back problems.   (R. at 134–40,

169.)   Plaintiff's application was denied initially and upon reconsideration.   Plaintiff sought a

*de novo* hearing before an administrative law judge.   (R. at 106.)   Administrative Law Judge

Thomas Wang ("ALJ") held a hearing on September 17, 2014, at which Plaintiff, who was

represented by counsel, appeared and testified.   (R. at 41–58.)   On November 10, 2014, the

ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social

Security Act.   (R. at 18–31.)   On February 23, 2016, the Appeals Council denied Plaintiff's

request for review and adopted the ALJ's decision as the Commissioner's final decision.   (R. at

1–4.) Plaintiff then timely commenced the instant action.

## II.      HEARING TESTIMONY[1]

### A.      Plaintiff's Testimony

At the September 17, 2014, administrative hearing, Plaintiff testified that she alleges

disability due to her pain and she "got to the point to where I couldn't stand it anymore."   (R. at

42.)   Her pain starts in her neck and radiates down her lower back and hips.   (*Id.*)   She lives

with her husband and seven-year-old son.   (*Id.*)   Plaintiff testified that she has problems driving

because it hurts her back to turn the steering wheel.   (R. at 43.)

She testified that she worked part-time at Shoe Carnival from August 2012 until March

2013, selling shoes one to two days every other week.   She testified that she left that job

because she was taking too many breaks and calling off too often due to pain.   (R. at 44–45.)

Plaintiff testified that she spends most of her day lying down.   (R. at 45.)   According to

Plaintiff, she cannot cook dinner, clean her house, or play with her son because of her pain.

(*Id.*)   At the time of the hearing, she was not taking any pain medications.   (*Id.*)   She has never

had back surgery, but has used a TENS unit, noting it works only two to three days and then it no

longer alleviated the pain.   (*Id.*)

---

[1]In addition to exertional impairments, the undersigned recognizes that Plaintiff alleges disability in part because of her mental impairments.   Plaintiff's SOE, however, focuses primarily on Plaintiff's exertional impairments and limitations.   Accordingly, the Court will focus its analysis of the evidence and the administrative decision on Plaintiff's exertional impairments and limitations.

Plaintiff also testified that she goes grocery shopping "four or five times a week," using a motorized cart; normally only getting "a few things at a time." (R. at 55.) Plaintiff stated she cannot walk a block at a reasonable pace. (*Id.*) Her husband will help her take a shower and brush her hair. (R. at 56.) She can walk up ramps but not stairs. (R. at 57.)

When asked why she could not work, Plaintiff testified that she cannot stand or sit for longer than five to ten minutes at a time. She would have to sit down and take several unapproved breaks. (R. at 47.) Plaintiff appeared at the hearing with a prescribed cane. (*Id.*)

## B. Vocational Expert Testimony

Eric W. Pruitt testified as the vocational expert ("VE") at the administrative hearing. (R. at 58-66.) He noted that Plaintiff has no past relevant work because there were no periods of substantial gainful activity. (R. at 59.) The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity ("RFC") to the VE. (R. at 60–64.) Based on Plaintiff's age, education, and work experience and the RFC ultimately determined by the ALJ, the VE testified that Plaintiff could perform 173,300 light, unskilled jobs in the national economy, such as a mail sorter, routing clerk, label coder, and laundry press operator. (R. at 61.) Plaintiff could also perform 109,450 sedentary, unskilled jobs in the national economy, such as a gauger, printed circuit board inspector, and film touchup inspector. (R. at 61–62.)

The VE further testified that if Plaintiff needed four fifteen-minute breaks in addition to regularly scheduled breaks, and if she would need to lie down or just rest, the jobs he identified do not allow for additional breaks above and beyond what is customarily provided for other employees. (R. at 62.) If Plaintiff would be off task 10 percent of the work day, miss two days

of work per month, or require a sit-stand option at will, it would be work-preclusive.   (R. at 62–63.)

### III.     MEDICAL RECORDS

**A.     William Chang, M.D.**

Plaintiff began treating with physiatrist, Dr. Chang on April 25, 2013.   (R. at 481–89.) Plaintiff complained of persistent pain in her entire back, from lower to upper back and posterior neck region.   She reported she began experiencing gradual onset intermittent lower back pain in the late 1990's without any immediate precipitating event.   Plaintiff's lower back pain gradually worsened over the years and became persistent for about five years.   (R. at 484.)   On examination, Dr. Chang found tenderness in the neck and back as well as a limited range of motion.   Plaintiff's straight leg raises were negative, she had full motor strength, her reflexes were normal, and she had a normal gait.   (R. at 482.)   Dr. Chang diagnosed Plaintiff with chronic persistent lower, middle and upper back pain; facet pain syndrome; chronic pain disorder; lumbar spine stabilizing muscle weakness; and morbid obesity.   (R. at 485.)   Dr. Chang recommended that Plaintiff increase her aerobic activity, exercise regularly, increase her endurance by performing activities of daily living, and perform a home exercise program independently, consistently, and regularly.   (R. at 483.)   Dr. Chang also prescribed aqua therapy.   (R. at 486.)

When seen for follow-up in May 2013, Plaintiff reported she had attended two sessions of aqua therapy and she still had pain in her entire back, especially the lower back, but that the pain now occurs intermittently.   Plaintiff described her pain as an on-and-off sharp squeezing sensation and she rated her pain severity at a level of 9 on a 0–10 visual analog scale.

Plaintiff also reported that when she was in a swimming pool, she did not feel any pain at her back at all.   (R. at 526.)   On examination, Dr. Chang found no tenderness at her neck, shoulders, extremities, or her back.   She had increased lower back pain with lower back active movement in extension and bilateral bending especially extension.   She exhibited a negative straight leg raise test bilaterally.   She had no abnormalities in her extremities, normal muscle strength, normal sensation, and a normal gait.   (R. at 526–27.)   Dr. Chang increased her Elavin and directed her to continue ongoing aqua therapy treatment until its completion.   He advised Plaintiff to go to an available swimming pool and perform the aqua therapy exercises on the days she was not attending aqua therapy sessions.   (R. at 527.)

In June, July, and August 2013, Dr. Chang found Plaintiff had no abnormalities in her extremities, normal muscle strength, normal sensation, full muscle strength, and a normal gait. (R. at 529–37.)   Dr. Chang continued to recommend that Plaintiff attend physical therapy, and she was advised to lose weight and continue her home exercise program.   (R. at 530, 534, 537.)

Records through February 2014 showed that Plaintiff continued to complain of back and neck pain.   (R. at 632–43.)   By January 2014, Dr. Chang diagnosed Plaintiff with fibromyalgia pain syndrome, persistent chronic lower back, middle and upper back pain with right lower extremity sciatic radicular pain (most likely due to chronic pain disorder, fibromyalgia pain syndrome, chronic thoracolumbar spine muscular strain secondary to leg length discrepancy, facet pain syndrome with the referring pain, chronic pain disorder, lumbar spine stabilizing muscle weakness, morbid obesity with weight gain, and lumbar L3-4 to L5-SI disk bulging), chronic neck pain (probably secondary to cervical spine muscular strain and cervical disc disorder, to rule out cervical disc herniation), leg length discrepancy with right lower extremity

shorter, morbid obesity with weight gain, insomnia, and chronic pain disorder through central sensitization. (R. at 639.) He noted that Plaintiff continued to have persistent painful symptoms with increasing intensity, and that all of the conservative treatment and interventional injection treatment has not produced significant prolonged pain reduction effect. (*Id*.) Dr. Chang believed that Plaintiff's persistent pain was most likely due, not only to fibromyalgia pain syndrome, but also to hypersensitivity of nervous system function involving pain perception. (*Id*.) He recommended that Plaintiff be physically active as much as she could tolerate, and that she should change her walking exercise routine to a routine of higher frequency, but that the duration of the routine could be reduced to a more tolerable level. (*Id*.) He also recommended that she should perform a frequent short-duration, low-impact light aerobic exercise regularly, and he placed Plaintiff on a regular physical therapy treatment program with the goal of increasing her functional capacity and tolerance despite persistent pain. (*Id*.) In February 2014, Dr. Chang prescribed an adjustable straight cane. (R. at 659.)

In March 2014, Dr. Chang completed a medical source statement. (R. at 627–31.) Dr. Chang opined that Plaintiff could lift or carry up to 15 pounds on an occasional basis, and sit, stand or walk for 1 hour or less during an 8-hour work day. (R. at 627–28.) According to the statement, Plaintiff required the use of a cane to ambulate "at times." (R. at 628.) Dr. Chang opined that it was medically necessary for Plaintiff to use a cane, but that she was able to ambulate without the cane effectively within her own home. (*Id*.) Dr. Chang also opined that Plaintiff was limited to occasional bilateral reaching, and frequent handling, fingering, and feeling. (*Id.*) Plaintiff was further precluded from climbing ladders or scaffolds, balancing, or crawling, and was occasionally limited in her ability to stoop, kneel, or crouch. (R. at 629.)

Dr. Chang listed the medical or clinical finding which support this assessment as: 18/18 tender points required for fibromyalgia diagnosis; tenderness at entire cervical, thoracic and lumbar spine regions; bilateral upper and lower extremities; and MRI results of the lumbar spine from August 2013 showing disc degeneration and desiccation at L3-4, L4-5, and L5-SI, with a small central disc herniation at L4-5.   (R. at 631.)

Plaintiff reported to Dr. Chang in April 2014 that she "sometimes" needed to use her mother's straight cane to assist with walking due to back pain.   (R. at 644.)

**B.      Genesis Rehabilitation Center**

Plaintiff attended physical therapy from May through July 2013.   (R. at 510–25.) When initially evaluated, the physical therapist found decreased range of motion and flexibility, pain, decreased muscular strength, palpable tenderness, soft tissue dysfunction, and postural dysfunction.   (R. at 520.)   During therapy, her therapist observed that Plaintiff had no pain behaviors during the aquatic sessions.   (R. at 510, 512, 515.)   Throughout the sessions, Plaintiff had no issues with her gait.   (R. at 510-25.)   In July 2013, no goals were met and Plaintiff reported she could not tolerate the aquatic therapy or the stretching.   (R. at 510.)

**C.      Yahya Bakdalieh, M.D.**

The first treatment record in July 2013 from pain management specialist, Dr. Bakdalieh, reflects that Plaintiff exhibited tenderness over the cervical, thoracic, and lumbar paraspinal muscles.   (R. at 549.)   However, Dr. Bakdalieh also noted that Plaintiff had good active range of motion and normal muscle strength in her lower extremities and that she "walks normally without assistive devices."   (*Id*.)   In the fall of 2013, Plaintiff underwent two bilateral lumbar medial branch blocks.   (R. at 551–58.)   In December 2013, Dr. Bakdalieh again noted that

Plaintiff walked normally without assistive devices. (R. at 597.) He diagnosed Plaintiff with chronic lower back and neck pain, ordered an MRI and prescribed medication. (*Id*.)

On November 18, 2013, Dr. Bakdalieh and Plaintiff's physical therapist at that time, Jacquelyn Yom, PT, opined that Plaintiff could stand, walk or sit for a total of 1 hour each during an 8-hour workday, lift 10 pounds on a rare basis, and occasionally bend, squat, crawl, or climb stairs. (R. at 543–44.)

When seen in December 2013, given the limited relief seen from the steroid injections, Dr. Bakdalieh recommended holding any further injections and referred Plaintiff to a neurosurgeon. Dr. Bakdalieh noted that Plaintiff walked normally without assistive devices and prescribed a TENS unit. (R. at 559.) In January 2014, based on the "significant improvement in the patient's lower back pain," Dr. Bakdalieh discharged Plaintiff from the clinic. (R. at 561.)

### D.    Andrew C. Stiegler , DC

Plaintiff initially began receiving chiropractic treatment in 2005 when she was 18 years old due to low back and hip pain. (R. at 342–46.) Dr. Stiegler treated Plaintiff for cervical, thoracic and lumbosacral area segmental dysfunction/subluxation. (R. at 342–400.) When he examined Plaintiff in July 2012, Dr. Stiegler reported mal-alignment of the spine with deep paraspinal musculature localized to the entire lower cervical spine. He also found joint dysfunction and subluxation in the lower and upper thoracic spine areas. (R. at 386.)

Plaintiff returned to treatment in May 2013. (R. at 538–40.) Dr. Stiegler ordered diagnostic imaging, which did not reveal significant abnormalities. (R. at 541.)

Plaintiff was seen again in May 2014. Dr. Stiegler found Plaintiff had 5/5 motor

strength in all muscle groups, and although she had decreased range of motion of the spine, she was limited by pain; no neurological involvement was noted.   (R. at 719–20.)   Plaintiff was able to heel walk on the right and toe walk bilaterally, and her deep tendon reflexes were normal. (*Id.*). Dr. Stiegler diagnosed moderate cervicalgia, thoracalgia, and lumbosacral neuritis/radiculitis.   (R. at 724.)   He assessed that, "the patient's symptoms are exhibiting measurable progress."   (R. at 727.)

E.      **Genesis Health Care System**

The record contains numerous visits to the emergency room from 2010 through 2014. During these visits Plaintiff complained of coughs, colds, pain in her arm, and allergies.   (R. at 251, 256–57, 265, 278, 284, 299, 300–01, 317, 320, 327, 413.)   Reports of examinations during these visits stated that Plaintiff's musculoskeletal and neurological examinations were normal, and that she denied back pain.   (R. at 251–52, 257–58, 265–66, 278–79, 284–85, 317–18, 320–21, 327, 413.)   Plaintiff had no joint swelling, back pain, or gait problems (R. at 251, 317), and had normal range of motion in her musculoskeletal system (R. at 279, 318, 321, 327, 414) and full muscle strength (R. at 318, 321.)   She denied pain or tenderness.   (R. at 312, 318, 321.)

In March 2013, Plaintiff underwent x-rays of her lumbar, cervical, and thoracic spine that revealed no abnormalities.   (R. at 271, 273, 275, 277.)

F.      **State Agency Evaluation**

On May 29, 2013, Edmond Gardner, M.D., a state agency physician, reviewed the record upon reconsideration and opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk about six hours in a workday; and sit for about six hours in a workday.   (R. at 87.)   Plaintiff was also limited to occasionally stooping and

crouching; she could never climb ladders, ropes, or scaffolds; and could never kneel or crawl.

(R. at 87–88.)   Dr. Gardner further limited Plaintiff to no unprotected heights or moving

machinery; no commercial driving; and no uneven terrain.   (R. at 88.)   Dr. Gardner based the

limitations on cervical, thoracic and lumbosacral pain with morbid obesity with a BMI of 60.64.

(*Id.*)   Dr. Gardner noted that Plaintiff alleged her back pain was worse and that she could only

sit or stand for short periods of time, but he found Plaintiff's allegations to be only partially

credible.   He observed that x-rays from cervical to lumbar were normal.   Dr. Gardner

concluded that Plaintiff's allegations that she could sit for 10 minutes and stand for 20 were

disproportionate with medical findings and were considered not credible.   (R. at 86.)

## IV.   ADMINISTRATIVE DECISION

On November 10, 2014, the ALJ issued his decision.   (R. at 18–31.)   At step one of the

sequential evaluation process, *see* 20 C.F.R. § 416.920(a)(4), the ALJ found that Plaintiff had not

engaged in substantially gainful activity since October 5, 2012, the application date.   (R. at 20.)

At step two, the ALJ found that Plaintiff had the following severe impairments: morbid obesity,

a depressive disorder, and adjustment disorder with anxiety, fibromyalgia, lumbar degenerative

disc disease with L5-S1 foraminal narrowing, cervical disc disorder, and thoracolumbar spine

strain.   (*Id.*)   At step three, the ALJ concluded that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled one of the listed impairments

described in 20 C.F.R. Part 404, Subpart P, Appendix 1.   (*Id.*)   At step four of the sequential

process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, [the ALJ] finds that the claimant
> has the residual functional capacity to perform light work as defined in 20 CFR
> 416.967(b) except she is limited to work that requires occasional climbing of
> ramps or stairs, [stooping], and crouching.   She cannot perform work that
> requires her to climb ladders, ropes, or scaffolds, or to kneel, crawl, or perform

commercial driving. She is limited to occasional exposure to extreme cold and vibration. She can never work around moving or hazardous machinery, unprotected heights, or uneven terrain. Mentally, she is limited to goal-based production where the work is measured by the end result, without pace-work, and where she can be off task up to 5% of the workday. She can occasionally work in low stress jobs defined as jobs involving only occasional changes in the work setting.

(R. at 22.)  In reaching this determination, the ALJ assigned "significant weight" to the opinion of Dr. Gardner, the state agency reviewing physician at the reconsideration level, finding his opinion was consistent with the record as a whole. (R. at 29.)  The ALJ determined that Dr. Chang's opinion was entitled to only "little" weight, finding his opinion inconsistent with the record and with his own treatment notes. (R. at 26.)  The ALJ stated that Dr. Chang's reports routinely indicated "mild" or "normal" findings, stated that Plaintiff could walk without assistive devices, and documented significant improvement. (R. at 26–27.)  The ALJ further determined that Dr. Chang's opinion conflicted with Plaintiff's testimony that she had no problems in reaching, handling, fingering, or feeling. (R. at 27.)

The ALJ declined to give Dr. Bakdalieh's opinion controlling weight and assigned it only "little weight." The ALJ noted that the questionnaire was "completed by a physical therapist who evaluated the claimant at the doctor's request," (*id.*) and that the opinion concerning plaintiff's abilities was overly restrictive, especially in light of evidence of normal diagnostic imaging and condition on physical exam and Plaintiff's sustained physical activities. (*Id.*) The ALJ granted "partial weight" to the assessment of Dr. Stiegler, Plaintiff's chiropractor, which he considered as "other source" evidence under SSR 06-3p. (*Id.*)

Relying on the VE's testimony, the ALJ concluded that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

(R. at 30–31.)   The ALJ therefore concluded that Plaintiff was not disabled under the Social

Security Act.   (R. at 31.)

## V.        STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the

Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

proper legal standards.'"   *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. §

405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . .").   Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"   *Rogers*, 486

F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.   The Court

must "'take into account whatever in the record fairly detracts from [the] weight'" of the

Commissioner's decision.   *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).   Nevertheless, "if substantial

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is

substantial evidence in the record that would have supported an opposite conclusion.'"   *Blakley*

*v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.

1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision

of the Commissioner will not be upheld where the SSA fails to follow its own regulations and

where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.    ANALYSIS

In her SOE, Plaintiff advances three contentions of error.   Plaintiff first asserts that the ALJ violated the treating source rule when evaluating Dr. Chang's opinions.   Specifically, Plaintiff argues that the ALJ did not properly determine that Dr. Chang's opinions were entitled to controlling weight; did not properly accord special deference to Dr. Chang's opinions; and did not provide sufficient good reasons for rejecting Dr. Chang's opinions.   Plaintiff next argues that the ALJ incorrectly determined that a medical source statement was completed by a physical therapist instead of Dr. Bakdalieh and therefore improperly weighed the medical source statement.   Finally, Plaintiff contends that the ALJ erred in failing to incorporate Plaintiff's need to use a cane for ambulation into her RFC despite the allegedly significant medical evidence documenting the use of a cane as a medical necessity.

### A.    ALJ's Consideration of the Medical Opinion Evidence

According to Plaintiff, the ALJ should have accorded more weight to the opinion of treating physician Dr. Chang.   (SOE at 7–13; Reply 3–4.)   The Commissioner counters that substantial evidence supports the ALJ's assessment and that he reasonably evaluated the medical opinion evidence.   (Opposition at 7–16.)

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical

evidence that cannot be obtained from the objective medical filings alone . . ." 20 C.F.R. §

416.927(c)(2); *Blakley*, 581 F.3d at 408. If the treating physician's opinion is "well-supported

by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent

with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it

controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ

must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544

(6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling

weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment
> relationship and the frequency of examination, the nature and extent of the
> treatment relationship, supportability of the opinion, consistency of the opinion
> with the record as a whole, and the specialization of the treating source-in
> determining what weight to give the opinion.

*Id*. Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination

or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. §

416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to

any subsequent reviewers the weight the adjudicator gave to the treating source's medical

opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec*., 375 F. App'x 543, 550

(6th Cir. 2010) (internal quotation omitted). However, there is no requirement that the ALJ

"expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v.

Comm'r of Soc. Sec*., 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and

the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20

C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision);

*Boseley v. Comm'r of Soc. Sec. Admin.*, 397 F. App'x 195, 199 (6th Cir. 2010) ("Neither the ALJ

nor the Council is required to discuss each piece of data in its opinion, so long as they consider

the evidence as a whole and reach a reasoned conclusion.").   Although the ALJ will consider

opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on

issues reserved to the Commissioner are generally not entitled to special significance.   20 C.F.R.

§ 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

The ALJ considered Dr. Chang's opinion in the medical source statement dated March

27, 2014, but assigned it "little weight," reasoning as follows:

> The claimant's spine specialist provided a medical source statement in which he
> assessed the claimant's residual functional capacity.   He opined that the claimant
> could occasionally lift and carry up to 15 pounds, and sit or stand, five minute at a
> time without interruption or walk 10 minutes at a time (Exhibit 18F/1, 2).   He
> opined that she could sit and stand less than an hour per eight hour workday, or
> walk for one hour in an eight hour workday.   He indicated that the claimant
> sometimes requires the use of a cane to ambulate, although he stated that she
> could ambulate within her home without it (Id., at 2).   He opined that she was
> unable to single leg stand and was therefore a fall risk.   He opined that she could
> occasionally reach, including overhead reach, and could frequently handle, finger,
> or feel.   He noted that her limitations were self-limited secondary to pain. He
> opined that she could occasionally push or pull with her upper extremities, and
> that she could frequently use her feet for operation of foot controls.   He opined
> that she could occasionally climb stair and ramps, stoop, kneel, and crouch.   He
> opined that she could never climb ladders or scaffolds, balance, or crawl due to
> poor balance for climbing and increased pain with postural activity.   He opined
> that she can occasionally work around unprotected heights, moving mechanical
> parts, or extremes of temperature, airborne irritants, and vibrations (Exhibit
> 18F/3, 4).

> Though Dr. Chang is a treating source, this opinion was given little weight,
> because it is wholly inconsistent with his office treatment records, as well as with
> the greater weight of the evidence of record.   His treatment records routinely
> indicated that her symptoms and diagnostic findings were "mild" or "normal" and
> his physical examination records indicate that she walked normally without
> assistive devices.   His notes document significant improvement of her lower back
> pain, good active range of motion, and normal muscle strength (See Exhibits
> 1lF/5;  2F/23,  25,  27;  15F/36,  58;  19F/2;  27F/3).    Moreover,  Dr.  Chang's
> assessments conflict with the claimant's statements.   At the hearing, she stated

that she has no problems with reaching, handling, fingering, or feeling. This assessment is too restrictive, and appears to have little basis in the evidence. Accordingly, the undersigned assigned it little weight.

(R. at 26–27.)

The Court finds that the ALJ offered good reasons for rejecting Dr. Chang's opinion. *See* 20 C.F.R. § 416.927(c) (citing supportability and consistency of the opinion with the record as a whole). Plaintiff insists that Dr. Chang's opinion is not internally inconsistent and that the ALJ's reliance on certain exhibits does not support his inconsistency opinion. (SOE at 9.) However, for the reasons that follow, substantial evidence supports the ALJ's conclusion that Dr. Chang's opinion was inconsistent with his own treatment notes. *See* 20 C.F.R. § 404.1527(c)(4) (identifying consistency with the record as a whole as a relevant consideration). Dr. Chang's medical source statement reflects that he premised his opinion on certain limitations in Plaintiff's ability to sit, stand, walk, reach, handle, finger and feel. Dr. Chang's treatment notes, however, reveal that Plaintiff had no abnormalities in her extremities, normal muscle strength, normal sensation, full muscle strength, and a normal gait. (R. at 482, 485, 526–27, 529–30, 532–33, 535–36, 632–33, 635–36, 638–39, 642, 645.) In May 2013, Plaintiff complained of pain, but Dr. Chang, upon exam, reported that Plaintiff had no tenderness in her neck, shoulders, back, or extremities. (R. at 526.) In December 2013, Dr. Chang prescribed a portable TENS unit but noted that Plaintiff walked normally without assistive devices and had normal strength in her lower extremities. (R. at 597.) In January 2014, Dr. Chang reported good active range of motion and "5/5" muscle strength in Plaintiff's lower extremities with "significant improvement" in her lower back pain. (R. at 619.) Dr. Chang advised Plaintiff to increase her aerobic activity and encouraged Plaintiff to start looking for a job. (R. at 25, 483, 537, 640.) These

inconsistencies provide substantial evidence for discounting Dr. Chang's opinion. *See Dawson v. Comm'r of Soc. Sec.*, 468 F. App'x 510, 513 (6th Cir. 2012) (finding ALJ properly discounted a treating physician's opinion where the physician's conclusions were inconsistent with his own progress notes).

The ALJ also found that Dr. Chang's opinion was inconsistent with the greater weight of the evidence. (R. at 26.) This finding enjoys substantial support in the record. For example, in assessing Plaintiff's RFC, the ALJ noted that numerous emergency department treatment records for illnesses such as coughs, colds, and allergies, reflected that Plaintiff's musculoskeletal and neurological examinations were normal, and that she denied back pain, anxiety, and depression. (R. at 24, 251, 257–58, 265–66, 278–79, 284–85, 300–01, 317–18, 320–21, 327–28, 413–14.) The records also noted that Plaintiff exhibited no joint swelling, back pain, or gait problems (R. at 251, 278, 284, 317, 320.) and had a normal range of motion in her musculoskeletal system (R. at 279, 321, 328, 414) and full muscle strength (R. at 318, 321).

The ALJ noted that while Plaintiff complained of pain during chiropractic treatment, the March 2013 x-rays of her lumbar, thoracic, and cervical spine were normal. (R. at 24, 481.) Despite complaints of back pain, Plaintiff had normal range of motion and normal reflexes. (R. at 24, 464.) The ALJ further observed that although Dr. Chang prescribed aqua therapy, Plaintiff failed to attend a number of sessions. (R. at 24, 510, 512.) Plaintiff reported that she could not tolerate the aqua therapy, but no pain behavior or pain was noted during aquatics. (R. at 24, 510, 512, 515.) Although aqua therapy was terminated in July 2013, Plaintiff reported that she continued to perform the exercises in a community swimming pool on a weekly basis and could not do so more frequently due to a lack of transportation. (R. at 24, 510, 529.)

Upon exam in July 2013, Dr. Bakdalieh observed that Plaintiff walked "normally without assistive devices[,]" had a good range of motion in extremities and normal muscle strength, and had no neurological abnormalities. (R. at 548–49.) Dr. Bakdalieh reported similar findings in September, October, and December 2013. (R. at 550, 553, 555, 559.) During three of these exams, Dr. Bakdalieh noted that Plaintiff walked without assistance. (R. at 553, 555, 559.)

In evaluating Plaintiff's RFC, the ALJ also cited Plaintiff's daily activities as demonstrating that she was not as functionally limited as alleged. (R. at 29.) Plaintiff is the primary caregiver for her kindergarten-aged son. In a function report dated December 10, 2012, she admitted that "normally I'm running errands from the time I get up until go to bed. Then there's when I work. I work about 6 hours and I'm on my feet and moving, bending, lifting." (R. at 29, 177.) Plaintiff's ability to function in this regard further supports the ALJ's finding that Dr. Chang's opinion was inconsistent with the greater weight of the evidence.

Plaintiff nevertheless insists that Dr. Chang's opinion is consistent with the record, citing to specific evidence. (SOE at 9–10.) However, the Court defers to the ALJ's decision "'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*, 581 F.3d at 406 (internal citations omitted).

Finally, plaintiff challenges the ALJ's reliance on Plaintiff's testimony that she had no difficulty handling, fingering, or feeling, (R. at 27, 58.), because the ALJ only asked generic questions and did not ask about her ability to use her hands on a daily basis, and because Plaintiff is not a medical professional. (SOE at 11–12.) However, as the Commissioner points out, Plaintiff never testified or suggested that her ability to perform these tasks would diminish throughout the day. (R. at 58.) Moreover, Dr. Chang did not explain why Plaintiff's abilities

in these areas were more limited than Plaintiff testified.    (R. at 627–32.)    Even though Plaintiff

is not a medical professional, her contradictory testimony is nevertheless a relevant consideration

when weighing Dr. Chang's opinion.    20 C.F.R. § 404.1527(c)(4).

In summary, the ALJ properly weighed and assessed Dr. Chang's medical source

statement, which was supported by substantial evidence.    Plaintiff's first contention of error is

**OVERRULED**.[1]

## B.    The ALJ's Consideration of Dr. Bakdalieh's Opinion

Plaintiff contends that the ALJ erred in partially discrediting a medical source statement

as not from an "acceptable medical source" because he incorrectly determined that a physical

therapist, instead of Dr. Bakdalieh, completed the evaluation.    (SOE at 13–15; Reply at 3–4.)

The Court disagrees and finds that substantial evidence supports the ALJ's assessment of the

evaluation.

"[A]n opinion signed by both a medically acceptable source, such as a physician, and a

non-acceptable source, such as a social worker, may be properly given controlling weight as a

treating source opinion if the signing physician personally qualifies as a treating source."

*Mitchell v. Comm'r of Soc. Sec.*, No. 5:15 CV 974, 2016 WL 4507791, at *6 (N.D. Ohio Aug.

29, 2016) (citation omitted); *see also Robinson v. Comm'r of Soc. Sec.*, No. 2:14-cv-01682, 2015

WL 5768483, at *3 (S.D. Ohio Sept. 30, 2015) (SSR 96-2p requires that a treating source

opinion must be a medical opinion and must come from a treating source; the Ruling does not

distinguish between opinions filled out and signed by a treating psychiatrist and opinions filled

out by a social worker and then signed—and thus adopted—by a treating psychiatrist).    "Where

---

[1]  To the extent that Plaintiff refers to the ALJ's weighing of Dr. Bakdalieh's opinion in her first
contention of error, the Court addresses that issue in its discussion of the second contention of

an ALJ confronted by such an opinion bearing the signatures of both an acceptable and non-acceptable source simply declares the non-acceptable source the sole 'author' of that opinion, and makes no attempt to ascertain whether the acceptable source qualifies as a 'treating source,' the ALJ has failed to evaluate that opinion under the proper standard." *Mitchell*, 2016 WL 4507791, at *6 (citation omitted).

Here, an assessment captioned "Physical Capacity Evaluation," describes Plaintiff's limitations that would be present in a work setting where an individual is expected to work an eight-hour day, five days a week. (R. at 543–44.) The ALJ assigned "little weight" to this assessment, reasoning as follows:

> Little weight was given to the assessment provided by the claimant's pain management specialist [Dr. Bakdalieh], set forth at Exhibit 12F. In this questionnaire, which was completed by [a] physical therapist who evaluated the claimant at the doctor's request, it was opined that the claimant can sit, stand, and walk no more than one hour of an 8-hour workday, and can rarely lift, with a lift maximum of 10 pounds. The report indicated that the claimant was unlimited in her ability to use her hands and feet for repetitive movements, and that she could occasionally bend, squat, crawl, and climb stairs, but that she could never climb ladders (Exhibit 12F/ 1, 2). As with Dr. Chang's assessment, this opinion is too restrictive, particularly with regard to the claimant's ability to sit, stand, and walk, because as noted previously, the diagnostic scans indicate relatively benign findings, her physical examination records (including those taken by the pain management physician) have routinely been normal, and her activities of daily living indicate that she is capable of more sustained exertional activity than this opinion source has indicated.
>
> Further, although the questionnaire was attributed to Dr. Bakdalieh, the claimant's pain management physician, it was signed by the physical therapist, Jacquelyn Yom (Exhibit 12F/2). A physical therapist is not an acceptable medical source, and this particular therapist did not provide physical therapy services to the claimant, and therefore does not have a longitudinal perspective of the claimant's functioning such that the assessment would fall within the purview of Social Security Ruling 06-3p. It lacks credibility as a treating source opinion, and as an opinion from an "other source" who is familiar with the claimant's

error.

> functioning.   The assessment itself is inconsistent with the medical evidence and
> other credible opinion evidence, and is therefore granted little weight.

(R. at 27.)   The signatures of both Dr. Bakdalieh and a physical therapist, dated November 18,

2013, and November 15, 2013, respectively, appear on the second page of the assessment.   (R.

at 544.)

Contrary to Plaintiff's assertion, the discussion recited above does not establish that the

ALJ improperly determined that the assessment should be solely credited to the physical

therapist.   Instead, the Court agrees with the Commissioner's reading of this discussion that the

ALJ considered the Physical Capacity Evaluation twice:   first, as an opinion from Dr. Bakdalieh

as a treating physician, and second, as an opinion from the physical therapist, an unacceptable

medical source.   (R. at 27.)   In other words, this is not a situation where the ALJ declared the

physical therapist to be the sole author of the assessment and failed to evaluate that opinion

under the proper standard.   *See Mitchell*, 2016 WL 4507791, at *6 (citation omitted).

However, even if Plaintiff is correct that the ALJ did not consider Dr. Bakdalieh as a

treating source, that error is harmless.   An ALJ may meet the purpose of the "good reasons"

requirement for rejecting a treating physician's opinion by indirectly attacking the supportability

of the treating physician's opinion or its consistency with other evidence in the record.

*Coldiron v. Comm'r of Soc. Sec*., 391 F. App'x 435, 439-41 (6th Cir. 2010); *Nelson v. Comm'r

of Soc. Sec*., 195 F. App'x 462, 470–72 (6th Cir. 2006).   Here, the ALJ analyzed the medical

record and cited to objective evidence, including diagnostic scans and physical examination

records, and considered Plaintiff's daily living activities.   (R. at 27.)   After doing so, the ALJ

concluded that Dr. Bakdalieh's opinion was too restrictive and inconsistent with the other record

evidence.   (*Id*.)   The ALJ's analysis "implicitly provides sufficient reasons for the rejection" of

Dr. Bakdalieh's restrictions in the Physical Capacity Report. *Nelson*, 195 F. App'x at 470

(quoting *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005) (internal quotation

marks omitted)).

For these reasons, the Court finds that the ALJ properly weighed and assessed Dr.

Bakdalieh's opinion contained within the Physical Capacity Evaluation. Plaintiff's second

contention of error is **OVERRULED**.

## C.      RFC Determination and ALJ's Consideration of Plaintiff's Use of a Cane

Plaintiff challenges the ALJ's RFC to the extent that it did not accommodate for

Plaintiff's use of a cane.   (SOE at 16–19; Reply at 2–3.)

### 1.      Standard

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and

mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x

149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a).   The determination of

the RFC is an issue reserved to the Commissioner.   20 C.F.R. §§ 404.1527(e), 416.927(e).

Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v.

Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).   When

considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the

temptation to play doctor and make their own independent medical findings.'" *Simpson v.

Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d

966, 970 (7th Cir. 1996)).   Additionally, the ALJ must consider all medical opinions that he or

she receives in evaluating a claimant's case.   20 C.F.R. § 416.927(d).   The applicable

regulations define medical opinions as "statements from physicians . . . that reflect judgments

about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

### 2. Application

Plaintiff challenges the RFC to the extent that it did not account for Plaintiff's use of a cane. In his decision, the ALJ specifically considered Plaintiff's use of a cane, reasoning as follows:

> However, the claimant's allegations of her inability to sit, stand, or walk for more than a few minutes at a time are not fully credible. During her consultative psychological examination, she told Dr. Meyer that she is able to work, but that she was limited physically as to the types of work she could do, which indicates that she considered herself capable of some work. Further, the record indicates that she worked part-time at Shoe Carnival since the alleged onset date. She testified that she worked there from August 2012 until March 2013, selling shoes one to two days every other week. She was performing this work as of the date of the consultative examination. She testified that she had to leave that job because she was taking too many breaks and calling off too often due to pain, and that she spends most of her days lying down, but in her function report she indicated that she is a primary caregiver for her kindergarten-aged son, and she stated that "normally I'm running errands from the time I get up" until returning to bed. She reported that when she was not running errands, she was working, where she worked for about six hours on her feet, moving, bending, and lifting (Exhibit 6E/2). She indicated that she could lift 15-25 pounds, walk "less than ¼ mile" and stand about an hour before she began to feel pain (Id., at 6). Her function report is dated December 10, 2012, and the record does not contain evidence of significant worsening of any of her impairments after that date. Though she appeared at the hearing with a cane and has a prescription for the device, she told her physician in April 2014 that she "sometimes" needs to use her mother's straight cane to assist walking due to back pain, and as noted above, her physician opined at Exhibit 18F that she requires the use of a cane to ambulate "at times" (Exhibits 20F/1, 18F/2). All of this evidence indicates that she is not dependent on the cane for assistance with walking, and that she is capable of prolonged physical activity at least the light exertional level per her own statements in documents submitted to the Agency. Moreover, she testified at the hearing that she is not currently taking any pain medications. The relatively benign diagnostic findings in the medical imaging and physical examinations, the conservative medical treatment, and the claimant's activities of daily living indicate that, while she does have symptoms that could reasonably arise from her

documented impairments, she is not as functionally limited as alleged.

(R. at 29.)

Plaintiff challenges the ALJ's failure to accommodate for her use of a cane, contending that her treating physician, Dr. Chang, reported that Plaintiff used a cane "at times" to ambulate, that the cane was "medically necessary," although she could ambulate at home without the use of a cane. (SOE at 17.) The Court disagrees and finds that substantial evidence supports the ALJ's RFC assessment that does not accommodate for use of a cane.

"Before finding [a cane] is medically required, the record must 'describ[e] the circumstances for which it is needed (*i.e.*, whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).'" *Salem v. Colvin*, No. 14-CV-11616, 2015 WL 12732456, at *4 (E.D. Mich. Aug. 3, 2015) (quoting SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996)). Here, the ALJ fully considered the record and concluded that Plaintiff's medical records and physical activities belie her alleged need for a cane. As the ALJ noted, Dr. Chang's records stated that Plaintiff only needed the cane "at times" and that she "sometimes" needed to use her mother's cane to ambulate. (R. at 29.) The ALJ also noted that Plaintiff had worked one to two days every other week selling shoes since the alleged onset date. (R. at 29, 44–45.) She is the primary caretaker for her young son and runs errands all day long. (R. at 29, 177.) When she is not doing that, she works for approximately six hours on her feet, moving, bending, and lifting. (*Id.*) While Plaintiff relies on Dr. Chang's prescription and his opinion that she sometimes needs a cane, this evidence is not dispositive. *See Salem*, 2015 WL 12732456, at *4. Moreover, the ALJ properly assigned little weight to Dr. Chang's opinion for the reasons previously discussed.

The medical evidence detailed above also supports the ALJ's RFC. For instance, Plaintiff's medical records consistently reflected that she had no gait problems (R. at 251, 568), a normal gait (R. at 482, 485, 527, 530, 533, 536, 633, 636, 639, 642, 645), and full strength and range of motion in her lower extremities (R. at 549, 559, 597.) In physical evaluations, Dr. Bakdalieh, reported on at least three occasions that Plaintiff "walk[ed] normally without assistive devices[.]" (R. at 549, 559, 597.) In short, even though Dr. Chang prescribed a cane and noted that Plaintiff needed to use the cane "at times," there is ample evidence demonstrating that Plaintiff was capable of ambulating without a cane. The ALJ properly considered all of the evidence concerning Plaintiff's use and nonuse of a cane in concluding that no special accommodation for the use of a cane was required in plaintiff's RFC, and this determination was supported by substantial evidence. *See* SSR 96-9p; *Marko v. Comm'r of Soc. Sec.*, No. 2:16-cv-12204, 2017 WL 3116246, at *5 (E.D. Mich. July 21, 2017) ("In sum, there is nothing in the record to indicate that Plaintiff was required to use a cane more than 'occasionally,' let alone constantly, and that such use would preclude her from performing light work. Case law in this district has found that the use of a cane does not preclude light work." (collecting cases)); *Salem*, 2015 WL 12732456, at *4 ("This zone of choice [within which an ALJ has discretion reaching a decision] exists even when the need for a cane is well-established by the medical record, if there is substantial evidence that the use of a cane is not required as part of the claimant's RFC."); *Moore v. Colvin*, No. 3:14–cv–01525, 2015 WL 1648985, at *7 (M.D. Tenn. Apr. 13, 2015) ("The ALJ properly considered the medical record and her own observations of Plaintiff's behavior at trial, and chose not to include a restriction based on Plaintiff's use of a cane in the RFC.")

Accordingly, Plaintiff's third contention of error is **OVERRULED**.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, Plaintiff's Statement of Errors is **OVERRULED** and the Commissioner's decision is **AFFIRMED**. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT in favor of Defendant**.


Date: September 25, 2017

_____s/James L. Graham_____
James L. Graham
United States District Judge